**MOORE U.S.A., INC., Plaintiff–Appellant,**

v.

**STANDARD REGISTER COMPANY, Defendant–Cross Appellant.**

Nos. 98–1386, 98–1387.

United States Court of Appeals, Federal Circuit.

Decided: Sept. 22, 2000.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 27, 2000.

Robert A. Vanderhye, Nixon & Vanderhye P.C., of Arlington, Virginia, argued for plaintiff-appellant.

William T. Enos, Oblon, Spivak, McClelland, Maier & Neustadt, P.C., of Arlington, Virginia, argued for defendant-cross appellant. On the brief was Charles L. Gholz, Oblong, Spivak, McClelland, Maier & Neudstadt, P.C., of Arlington, Virginia. Of counsel were Steven E. Lipman and Michael H. Jacobs.

Before NEWMAN, MICHEL, and CLEVENGER, Circuit Judges.

Opinion for the court filed by Circuit Judge MICHEL. Opinion concurring-in-part and dissenting-in-part filed by Circuit Judge NEWMAN.

MICHEL, Circuit Judge.

On December 22, 1997, Moore U.S.A., Inc. ("Moore") filed suit against Standard Register Company ("SRC") in the United States District Court for the Eastern District of Virginia for infringement of U.S. Patent Nos. 5,201,464 ("the '464 patent"), 5,253,798 ("the '798 patent"), and 5,314,110 ("the '110 patent").[1] On March 4, 1998, SRC counterclaimed for non-infringement and invalidity of the three patents. In three separate orders, the district court granted SRC's motions for summary judgment of non-infringement of the '464, '798, and '110 patents and dismissed the action with prejudice. *Moore U.S.A., Inc. v. Standard Register Co.*, No. 97–2054–A (E.D.Va. Mar. 20, 1998) (*"Moore I"*) (granting summary judgment of non-infringement of the '798 and '110 patents); *id.* (Apr. 3, 1998) (*"Moore II"*) (granting

summary judgment of no literal infringement of the '464 patent); *id.* (Apr. 17, 1998) (*"Moore III"*) (granting summary judgment of no infringement by equivalents of the '464 patent, and dismissing the action with prejudice).

Moore appeals the district court's grant of summary judgment of no infringement by equivalents with respect to the '464 patent and its grant of summary judgment of non-infringement with respect to the '798 and '110 patents. SRC conditionally cross-appeals the district court's dismissal of its counterclaims as moot. Because the district court correctly held that Moore had failed to raise a genuine issue of material fact as to whether SRC infringed the '464, '798, and '110 patents, we affirm the district court's grant of summary judgment of non-infringement of the '464, '798, and '110 patents and dismiss SRC's cross-appeal.

## BACKGROUND

### A. The '464 Patent

The '464 patent, entitled "PRESSURE SEAL C–FOLD TWO–WAY MAILER," discloses a C-fold[2] mailer-type business form with an integral return envelope. *See* '464 patent, col. 1, ll. 2, 23–25. The integral return envelope is created as part of the mailer during the folding and sealing process. *See id.*, col. 1, ll. 26–31. The recipient opens the mailer by removing stubs on the left and right edges. *See id.*, col. 1, ll. 58–60. After reading the information printed on the mailer, the user can remove a remittance stub from the top panel, insert the stub into the integral

---

[1]. Moore originally asserted infringement of a fourth patent, U.S. Patent No. 4,918,128 ("the '128 patent"). On SRC's motion for partial summary judgment, the district court dismissed the '128 patent from the case in view of Moore's inability to establish standing as the exclusive licensee. *See Moore U.S.A., Inc. v. Standard Register Co.*, No. 97–2054–A, slip op. at 13–14 (E.D.Va. Mar. 6, 1998). Moore does not appeal from this dismissal.

[2]. A "C-fold" mailer is a paper form that is divided into three sections by transverse fold lines. The C-fold mailer is so named because, upon folding, one of the two end sections becomes the middle of the mailer, while the other end section and the middle section form the top and bottom of the mailer. By contrast, in a "Z-fold" mailer, the middle section becomes the middle of the mailer, and the two end sections form the top and bottom of the mailer.

return envelope, detach the envelope from the rest of the mailer, and then seal and mail the envelope. *See id.,* col. 1, ll. 61–64.

Figures 1 and 2 of the '464 patent are illustrative:

*Fig. 1*

*Fig. 2*

The '464 patent has five independent claims. Independent claim 1 recites:

A mailer type business form intermediate, comprising:

a sheet of paper having a first face, adapted to provide the majority of the interior of the mailer when constructed, and a second face, adapted to provide the majority of the exterior of the mailer when constructed;

said sheet having first and second opposite, parallel longitudinal edges extending the entire length thereof, and opposite ends;

first and second longitudinal lines of weakness formed in said sheet parallel to and adjacent, but spaced from, said first and second longitudinal edges, respectively, said lines of weakness defining, with said longitudinal edges, longitudinal marginal portions;

*first and second longitudinal strips of adhesive* disposed in said first and second longitudinal marginal portions, respectively, of said first face, *extending the majority of the lengths of said longitudinal marginal portions,* and parallel to said first and second longitudinal edges;

third and fourth longitudinal strips of adhesive disposed parallel to said first and second strips, and disposed adjacent said first and second lines of weakness on the opposite side thereof from said first and second strips, on said first face, said third and fourth longitudinal strips disposed closer to one end of said ends than the other, and extending a distance substantially less than the extent of said first and second strips;

fifth and sixth longitudinal strips of adhesive parallel to said first and second longitudinal edges and disposed in said first and second marginal portions, respectively, on said second face, said fifth and sixth strips located adjacent the same end of said sheet as said third and fourth strips, and having a longitudinal extent at the most equal to said and fourth strips;

means defining a transverse adhesive strip on said first face, perpendicular to said third and fourth strips, longitudinally spaced from said third and fourth strips; and

means defining a line of weakness adjacent said transverse strip, on the opposite side thereof from said third and

fourth strips, to allow ready separation of the paper at that line.

*Id.,* col. 10, l. 40—col. 11, l. 18 (emphasis added). Independent claim 9 recites:

A mailer type business form, with integral return envelope, comprising:

a C-fold paper sheet having first and second faces, first and second opposite longitudinal edges extending the entire length thereof, and first and second transverse fold lines defining first, second and third sections of said sheet;

said second and third sections being larger than said first section;

first and second lines of weakness formed in said sheet parallel to and adjacent, but spaced from, said first and second longitudinal edges, respectively, said lines of weakness defining, with said longitudinal edges, longitudinal marginal portions;

first and second longitudinal strips of adhesive disposed in said first and second longitudinal marginal portions, respectively, of said first face, and parallel to said first and second longitudinal edges; *said first and second longitudinal strips connecting at least said first and second sections, and said third and first sections, together at said longitudinal marginal portions;*

third and fourth longitudinal strips of adhesive disposed parallel to said first and second strips, and disposed adjacent said first and second lines of weakness on the opposite side thereof from said first and second strips, on said first face, said third and fourth longitudinal strips connecting said first section to a part of said second section to form the sides of a return envelope;

*means defining a transverse adhesive strip on said first face,* perpendicular to said third and fourth strips, *in said third section;*

*means defining a transverse line of weakness adjacent said transverse strip in said third section, on the opposite side thereof from said second section,* to allow ready separation of the form at that line;

outgoing address, and outgoing return address, indicia visible from said second face of said third section;

return envelope address indicia printed on said second face in said first section; and

indicia facilitating and suggesting the insertion of return address information on said return envelope, said facilitating and suggesting indicia printed on said second face in both said second and third sections.

*Id.,* col. 11, l. 51—col. 12, l. 29 (emphasis added). Independent claims 16, 17, and 19 require many of the same limitations as claim 9, including those underlined above. *See id.,* col. 13, ll. 2–6, 15–19, 43–47, 56–58; col. 14, ll. 1–2, 30–34, 43–47. Like claim 9, claims 16, 17, and 19 require "outgoing address indicia" (or "outgoing addressee address indicia"), *id.,* col. 13, ll. 22–23; col. 14, ll. 5, 50–51, and claims 16 and 19 require "outgoing return address indicia," *id.,* col. 13, ll. 22–23; col. 14, ll. 50–51. Claim 12 requires "means defining a die cut window in said third section allowing viewing of said outgoing addressee address information through there." *Id.,* col. 14, ll. 6–9.

The accused SRC mailer, Form 8140C04, is a C-fold mailer with an integral return envelope, as depicted below (unfolded and with its lower panel folded up):

The accused SRC form has first, second, third, and fourth strips of adhesive on its front face, two longitudinal strips of adhesive in the margin portion of its back face, and a transverse adhesive strip and an associated line of weakness in the second (*i.e.*, middle) section of its front face. The first and second (*i.e.*, outermost) longitudinal strips of adhesive extend approximately 6–¹¹/₁₆th inches along the longitudinal margin of the accused SRC form, or 47.8% of the total margin length. The first and second strips cover portions of the longitudinal margins of the second and third (*i.e.*, top) sections, but do not cover any of the margin of the first (*i.e.*, bottom) section. The third and fourth (*i.e.*, innermost) longitudinal strips are inward of the longitudinal perforation lines and extend approximately 6–⅝ inches, or just over 99% of the length of the first and second longitudinal strips. The third and fourth strips, which cover portions of only the first and second sections, seal the sides of the integral return envelope by connecting the two sections.

Although the accused SRC form is somewhat similar to the patented mailer of claims 1, 9, 16, 17, and 19, Moore does not dispute that the accused SRC mailer cannot literally satisfy claim 1's requirement that the "first and second longitudinal strips of adhesive ... extend[ ] the majority of the lengths of said longitudinal mar-

ginal portions." *Id.*, col. 10, ll. 56–60. Additionally, Moore does not dispute that the accused SRC mailer cannot literally satisfy the following three limitations of claims 9, 16, 17, and 19:

(1) "first and second longitudinal strips connecting at least said first and second sections ... together at said longitudinal marginal portions";

(2) "means defining a transverse adhesive strip on said first face ... in said third section"; and

(3) "means defining a transverse line of weakness adjacent said transverse strip in said third section, on the opposite side thereof from said second section."

*Id.*, col. 11, l. 68—col. 12, l. 4; col. 12, ll. 13–17; col. 13, ll. 2–6, 15–19, 43–47, 56–58; col. 14, ll. 1–2, 30–34, 43–47.

On April 3, 1998, the district court granted-in-part and denied-in-part SRC's motion for summary judgment that its Form 8140C04 does not infringe the '464 patent. *See Moore II*, slip op. at 2. Given that Moore did not dispute the absence of the aforementioned claim limitations from the accused SRC form, the district court held that the accused SRC form could not literally infringe the '464 patent. *See id.* at 5. The district court concluded, however, that there was a genuine issue of material

fact as to whether the accused SRC product had elements which "function like the patented mailer, in the same way, to get the same result" and thus denied summary judgment of no infringement under the doctrine of equivalents. *Id.* at 6. The district court did not view the prosecution history as undisputedly precluding Moore from asserting infringement under the doctrine of equivalents. *See id.* at 5.

On SRC's motion for reconsideration, the district court granted summary judgment of no infringement of the '464 patent under the doctrine of equivalents. *See Moore III,* slip op. at 4. With respect to claim 1, the district court held that, because the first and second longitudinal strips of adhesive on the accused form extend less than the majority of the lengths of the longitudinal marginal portions, the accused form could not infringe claim 1 under the doctrine of equivalents in view of our decision in *Sage Products, Inc. v. Devon Industries, Inc.,* 126 F.3d 1420, 44 USPQ2d 1103 (Fed.Cir.1997). *See Moore III,* slip op. at 5. Applying the doctrine of equivalents to the accused SRC form, the district court reasoned, would "remove entirely the 'majority of the lengths' limitation of Claim 1." *Id.*

Similarly, the district court held that the accused form could not infringe claims 9, 16, 17, and 19 under the doctrine of equivalents. The district court explained:

> Under *Sage,* there can be no infringement under the doctrine of equivalents if the accused infringer "achieves the same result ... but does so by *a different arrangement of the elements.*" 126 F.3d at 1425 (emphasis added). Each of [the three missing limitations of claims 9, 16, 17, and 19] is a clear structural limitation precluding expansion of these independent claims under the doctrine of equivalents.... [E]xtending the doctrine of equivalents to cover the accused form would entirely eliminate these

structural limitations of the '464 patent. . . .

*Id.* at 6–7. The district court rejected Moore's contention that the Supreme Court's decision in *Sanitary Refrigerator Co. v. Winters,* 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147 (1929), condoned the rearrangement of claim limitations in an accused device, stating, "The Federal Circuit's language [in *Sage* ] is unequivocal in rejecting such rearrangement, and this court at this stage is bound by the Federal Circuit's clear language." *Moore III,* slip op. at 7.

**B. The '798 Patent**

Mailer forms for printing on an IBM 3800 printer are supplied to the printer in a continuous web, with perforation lines separating each form from the next to allow their separation after printing. *See* '798 patent, col. 1, ll. 28–31. Conventional forms had adhesive located only 1/16 inch away from the leading and trailing edges of each form. *See id.,* col. 1, ll. 42–43. When the IBM 3800 printer pauses, the movement of the continuous-feed forms stops such that the printer rollers are in constant contact with the forms, and a perforation line is located between two rollers. *Cf. id.,* Fig. 4. Because the rollers of the IBM 3800 printer create an impression 1/4 inch away from each side of the perforation line separating the forms, the adhesive on conventional forms, which fell within this impression region, frequently stuck to the rollers during such pauses. *See id.,* col. 1, ll. 28–35.

The '798 patent, entitled "PRESSURE SEAL ADHESIVE PATTERN FOR IBM 3800 PRINTERS," offers a solution to the problem of adhesive interfering with the printer rollers. Through the strategic placement of the pressure-sensitive adhesive away from the leading and trailing edges of each form, the patented form completely avoids interference with the printer rollers during printing pauses. *See id.,* col. 1, ll. 38–46. Figure 4 is illustrative:

**Fig. 4**

Independent claim 1 recites:

A mailer type business form processed by a printer having rollers, and operated to occasionally pause, the mailer comprising:

a folded paper sheet having first and second faces, first and second opposite longitudinal edges, and first and second transverse fold lines defining first, second and third sections of said sheet;

first and second longitudinal lines of weakness forming with said longitudinal edges first and second longitudinal marginal portions;

a first transverse edge and a second transverse edge, both parallel to said first and second fold lines;

longitudinal patterns of adhesive disposed in said longitudinal marginal portions for holding said marginal portions of said first through third sections together;

a first transverse pattern of adhesive disposed adjacent said first transverse edge on said first face and first section; and

*said first transverse pattern of adhesive being spaced from its associated transverse edge a distance sufficient to insure that the adhesive does not interfere with rollers of a printer used to process the mailer during pausing of the printer.*

*Id.*, col. 6, l. 50—col. 7, l. 5 (emphasis added). Claims 2, 4, and 10, which depend upon claim 1, do not specify a numerical limitation for the spacing of the adhesive

pattern away from its associated transverse edge. *See id.*, col. 7, ll. 6–14, 18–20; col. 7, l. 54—col. 8, l. 2. By contrast, all other claims of the patent (including claim 13, the only other independent claim), require that the relevant adhesive pattern be located 5⁄16 inch away from its associated transverse edge. *See id.*, col. 7, ll. 15–17, 21–53; col. 8, ll. 3–59.

During the prosecution of the '798 patent, the Patent and Trademark Office ("PTO") examiner rejected the "distance sufficient" limitation as indefinite under 35 U.S.C. § 112, ¶ 2 (1994) because "it is impossible to determine the distance claimed." The examiner further explained that "[i]n this invention, the exact spacing is critical because adhesive which is too close to its transverse edge will cause the printer problems noted on page 1 of the specification." In response, the applicant characterized the "distance sufficient" limitation as a "functional description, providing a complete, definite and accurate statement of what the spacing should be." The applicant continued, "The fact that the spacing is not in numerical terms is irrelevant since a functional term such as this, so long as it is itself definite, is entirely appropriate." The examiner subsequently allowed the claims to issue.

The accused SRC form is a continuous web, Z-fold mailer with three panels separated by fold lines. Adhesive strips along the margins of the side panels allow the mailer to be sealed after it has it has been

printed, torn from the continuous web, and folded. According to SRC, adhesive is located approximately $\frac{1}{16}$ inch from the leading and trailing edges of the accused SRC form, but does not interfere with the printer rollers during printer pauses due to its superior composition.

On March 20, 1998, the district court granted SRC's motion for partial summary judgment of non-infringement of the '798 patent. *See Moore I*, slip op. at 2. The court began by rejecting Moore's argument that the "distance sufficient" limitation of claim 1 depended upon the type of printer used and was not limited to the IBM 3800 printer. *See id.* at 7–8. The court emphasized the fact that, in response to the PTO examiner's rejection of claim 1 because "distance sufficient" was indefinite, the applicant had argued that the limitation was a " 'functional description' that provides a complete, definite and accurate statement of what the spacing should be." *Id.* at 7. In view of this prosecution history, the frequent reference to the IBM 3800 printer in the written description, and the reference to the IBM 3800 in the title of the '798 patent, the court concluded that "the 'distance sufficient' limitation in Claim 1 is in reference to the IBM 3800 printer." *Id.* at 8. The court reasoned that "[o]nly such a construction could explain the acceptance by the PTO examiner of plaintiff's response to the examiner's indefiniteness concerns." *Id.* Accordingly, because the IBM 3800 makes a $\frac{1}{4}$ inch-wide impression on each side of the perforation line during printing pauses, the court construed the "distance sufficient" limitation as "more than $\frac{1}{4}$ inch." *Id.*

In view of its claim construction, the court concluded that there was no genuine issue of material fact as to whether the accused SRC form infringed the claims of the '798 patent. *See id.* at 8–9. The court rejected the declarations by Moore's counsel that the adhesive on SRC's forms is spaced greater than $\frac{1}{16}$ or $\frac{1}{8}$ inch from the transverse edge, since these declarations nowhere stated that the relevant distances are "about $\frac{5}{16}$ inch." *Id.* at 8.

## C. The '110 Patent

The '110 patent, entitled "DOUBLE FOLD MAILER," discloses yet another mailer-type business form. The claimed mailer is double-folded to provide four panels of substantially the same size and thereby allow a great deal of information to be printed on the mailer. *See* '110 patent, col. 1, ll. 18–25. Figures 1 and 2 of the '110 patent are illustrative:

FIG. 1

FIG. 2

Independent claim 1 recites:

An intermediate comprising:

a sheet of paper having a first face adapted to provide the majority of the interior of the mailer when constructed, and a second face adapted to provide the exterior of the mailer when constructed; said sheet having first and second opposite parallel longitudinal edges, and opposite end edges;

first and second longitudinal lines of weakness formed in said sheet parallel to and adjacent, but spaced from, said first and second longitudinal edges, respectively, said lines of weakness defining, with said longitudinal edges, first and second longitudinal margin portions;

first and second longitudinal elongated patterns of adhesive disposed in said first longitudinal marginal portion of said first face, parallel to said longitudinal edges, and collectively covering substantially the entire distance between said opposite ends of said sheet;

third and fourth longitudinal elongated patterns of adhesive disposed in said second longitudinal marginal portion of said first face, parallel to said longitudi-

nal edges, and collectively covering substantially the entire distance between said opposite ends of said sheet;

first, second and third fold lines formed in said sheet each perpendicular to said longitudinal edges, and dividing said sheet into, in sequence, first, second, third, and fourth panels of substantially equal size;

fifth and sixth elongated patterns of adhesive disposed in said first longitudinal marginal portion of said second face, parallel to said longitudinal edges, and collectively covering substantially the entire distance in the dimension of said longitudinal edges in said third and fourth panels;

seventh and eighth elongated patterns of adhesive disposed in said second longitudinal marginal portion of said second face, parallel to said longitudinal edges, and collectively covering substantially the entire distance in the dimension of said longitudinal edges in said third and fourth panels; and

*wherein said sheet is devoid of adhesive extending along said end edges of said*

*sheet between said longitudinal lines of weakness.*

*Id.*, col. 5, ll. 14–58 (emphasis added). Independent claim 11, the only other independent claim of the '110 patent, also requires that its sheet be "devoid of adhesive extending along said end edges of said sheet between said longitudinal lines of weakness." *Id.*, col. 7, ll. 1–3.

Claims 1 and 11, as originally filed, required that the sheet be "devoid of adhesive extending along said end edges of said sheet, or parallel to said end edges of said sheet." The examiner rejected both claims as unpatentable over U.S. Patent No. 4,575,121 ("the Conti patent"), Figures 1 and 2 of which are shown below.

The Conti patent discloses a double-fold form with a continuous perimeter of adhesive on its front face and perforation lines located slightly inward of this adhesive strip. *See* Conti patent, Figs. 1–6. The Conti form also has two intermittent or continuous transverse strips of non-permanent adhesive adjacent to the center fold line and along an end edge of the back face to secure the mailer after folding. *See id.,* col. 3, ll. 26–43 (describing the gummed areas as "non-permanent"). In the embodiment employing intermittent strips of non-permanent adhesive, the rectangles of adhesive cover roughly 75% of the area between the longitudinal perforation lines. The recipient opens the Conti mailer by separating the strips of non-permanent adhesive and then tearing along the perforation line bordering three sides of the

mailer. *See id.,* col. 4, ll. 22–36. The examiner explained, "It would have been obvious to one of ordinary skill in the art to omit adhesive in the end edges of the sheet of Conti when its function was not desired."

In response, the applicant deleted the phrase "and parallel to said end edges of said sheet" and stated:

> With respect to claims [1 and 11], the provision of said end edges being devoid of adhesive decreases costs as well as processing time, and makes the end envelope easier to open. With Conti, three margins have to be removed to open the mailer, whereas according to the invention only two margins have to be removed. This also decreases the amount of waste generated by the consumer. Yet the structure according to the invention holds sufficiently during handling to form an entirely appropriate mailer.

The examiner then rejected claims 1 and 11 as indefinite under 35 U.S.C. § 112, ¶ 2. The examiner explained:

> Claims [1 and 11] are inaccurate. The sheet is not "devoid of adhesive extending along said end edges of said sheet" because the first through eighth adhesive patterns, as claimed, substantially cover "the entire distance between the ends of said sheet."

More simply stated, because the longitudinal elongated patterns of adhesive collectively extend the entire longitudinal length of the sheet, the end edges are not "devoid of adhesive" at their intersection with the longitudinal margins. The examiner also rejected claims 1 and 11 as unpatentable over the Conti patent in view of U.S. Patent No. 5,174,493 ("the File patent").

In response, the applicant amended claims 1 and 11 to add the phrase "between said longitudinal lines of weakness." The applicant remarked:

> Neither Conti nor File provide any teaching at all of the sheets being devoid of adhesive extending along the end edges thereof between longitudinal lines of weakness. As a matter of fact the teachings of both File and Conti are to the contrary. Therefore if File is combined with Conti it does not teach the invention, and reaffirms Conti's contrary teaching.
>
> . . .
>
> If one were to remove the adhesive from the end edges of Conti, the remaining elements of Conti would not perform the same function as before. Removing the sealing of the end edges which are required in Conti would defeat the purpose of Conti. In its preferred embodiment, Conti discloses a correspondence unit suitable for sending bank statements and multiple enclosures such as cancelled [sic] checks (see column 1, lines 25 through 37). If the end edges of Conti were not sealed the likelihood is that the inserts or cancelled checks would fall out.

The examiner subsequently withdrew his objections and allowed claims 1 and 11 as amended.

The accused SRC form has a row of ten widely-spaced circular patches of adhesive with a diameter of ³⁄₁₆ inch extending along the transverse end edge of the sheet between the longitudinal lines of weakness, as shown below:

The patches cover no more than 25% of the linear distance between the two longitudinal lines of weakness, and are spaced more than a ½ inch away from each other. After the form has been double-folded along its three fold lines, the row of adhesive patches cooperates with a second row of adhesive patches adjacent to the form's center fold line to tack the mailer closed along its end edge. No perforation or tear line abuts the first row of adhesive patches. A recipient of the accused SRC mailer opens the mailer by tearing along the longitudinal perforation lines and then separating the adhesive patches from one another.

On March 20, 1998, the district court granted SRC's motion for summary judgment of non-infringement of the '110 patent. *See Moore I*, slip op. at 2. The court noted that the term "devoid" is commonly defined to mean "[c]ompletely lacking; destitute; empty; without," citing *The American Heritage Dictionary* 361 (New College Ed. 1976). In view of this definition, the court held that "the undisputed existence of circular patches of adhesive in defendant's accused form necessitates the finding that there is no literal infringement of the '110 patent claims." *Moore I*, slip op. at 11.

The court further held that SRC's form could not infringe by equivalents under the doctrine of prosecution history estoppel. The court focused on the fact the applicant had amended his claims to specify that the sheet was "devoid of adhesive extending along said edges of said sheet" to distinguish the Conti patent, as discussed above. *See id.* at 13–14. In view of the clear claim language and the prosecution history, the district court concluded that the accused SRC form could not satisfy the "devoid of adhesive" limitation under the doctrine of equivalents. *See id.* at 14–15. The district court rejected Moore's contention that summary judgment was premature because discovery had not yet been completed, stating that Moore had failed to offer "any specific expected disclosures that would alter the [c]ourt's conclusions and findings." *Id.* at 15.

## DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is enti-

tled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding whether a genuine issue of material fact exists, the court must believe the evidence of the nonmovant and draw all justifiable inferences in the nonmovant's favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We review a district court's grant of summary judgment *de novo. See Johns Hopkins Univ. v. Cellpro, Inc.,* 152 F.3d 1342, 1353, 47 USPQ2d 1705, 1713 (Fed. Cir.1998).

■ "An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976, 34 USPQ2d 1321, 1326 (Fed.Cir.1995) (en banc), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996) (citations omitted). While claim construction is a question of law, *see Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1451, 46 USPQ2d 1169, 1174 (Fed.Cir.1998) (en banc), infringement, whether literal or under the doctrine of equivalents, is a question of fact, *see Bai v. L & L Wings, Inc.,* 160 F.3d 1350, 1353, 48 USPQ2d 1674, 1676 (Fed.Cir.1998).

## A. The '464 Patent

With respect to the '464 patent, Moore appeals only the district court's grant of summary judgment of no infringement under the doctrine of equivalents; it does not seek to disturb the district court's grant of summary judgment of no literal infringement.

### 1. Infringement of Claim 1

■ Moore contends that the longitudinal strips of the accused SRC form, which extend but a minority of the length of its longitudinal margins, are equivalent to the claimed strips, which extend a "majority of the lengths" of the longitudinal margins of the patented form. Moore argues that the district court misinterpreted our decision in *Sage* as barring the application of the doctrine of equivalents to the "majority of the lengths" limitation. Moore emphasizes that *Sage* involved structural limitations, *i.e.,* "an elongated slot at the top of the container body" and "a first constriction extending over said slot." *Sage,* 126 F.3d at 1422, 44 USPQ2d at 1105. Moore argues that the "majority of the lengths" limitation of claim 1, by contrast, simply involves a matter of degree, not structure. Moore analogizes the "majority of the lengths" limitation of claim 1 to the "pH from approximately 6.0 to 9.0" limitation at issue in *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997), for which a scope of equivalents is allowed unless barred by the prosecution history, *see Hilton Davis Chem. Co. v. Warner–Jenkinson Co.,* 114 F.3d 1161, 1164, 43 USPQ2d 1152, 1155 (Fed.Cir.1997) (en banc) (order remanding the case to the district court to determine whether prosecution history estoppel applies). *See also Laitram Corp. v. Cambridge Wire Cloth Co.,* 863 F.2d 855, 858–60, 9 USPQ2d 1289, 1293–95 (Fed.Cir. 1988) (holding that a claim limitation reciting "link ends being dimensioned and spaced apart by a distance slightly greater than said width" was satisfied under the doctrine of equivalents by an element with more than "slightly greater" spacing).

Moore argues that the "majority of the lengths" limitation is entitled to a scope of equivalents covering a minority of the lengths for two reasons. First, Moore alleges that SRC knew of and copied the '464 patent in developing its accused form. Moore suggests that SRC's knowledge and copying of the '464 patent act to expand the scope of equivalents, citing the Supreme Court's decision *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097, 85 USPQ 328 (1950), in support. Second, Moore contends that the hypothetical claim analysis of *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.,* 904 F.2d 677, 14

USPQ2d 1942 (Fed.Cir.1990), demonstrates that the "majority of the lengths" limitation can encompass first and second longitudinal strips that extend only a minority of the lengths of the longitudinal margins. Moore posits a hypothetical claim in which the phrase "about half of the length of the first face, or essentially the entire length" replaces the phrase "the majority of the lengths of said longitudinal marginal portions" from claim 1. According to Moore, such a hypothetical claim would not embrace the prior art, yet would still read on the accused SRC form.

Moore further contends that its desired scope of equivalents for claim 1 would not vitiate the "majority of the lengths" limitation. Moore characterizes the critical issue as whether first and second longitudinal strips of adhesive that extend "about 48%" of the length of the longitudinal margins are insubstantially different from strips that extend "50.001%" of the length of such margins. Moore argues that there is a genuine issue of material fact as to whether "about 48%" is equivalent to "50.001%" (e.g., by performing substantially the same function, in substantially the same way, to achieve substantially the same result), which precludes summary judgment of non-infringement. According to Moore, the written description unequivocally teaches such equivalence, because it states:

> While the longitudinal adhesive strip sections 35 through 39' are illustrated in FIG. 1 as extending essentially the entire length of the face 11, depending on the particular type of adhesive utilized and the end requirements, it may only be necessary for the adhesive to extend about half of the length 11.

'464 patent, col. 6, ll. 11–16.

■ We cannot agree with any of Moore's theories on infringement by equivalents. If our case law on the doctrine of equivalents makes anything clear, it is that all claim limitations are not entitled to an equal scope of equivalents. Whether the result of the All Limitations Rule, *see*

*Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 934–35, 4 USPQ2d 1737, 1739–40 (Fed.Cir.1987) (en banc), prosecution history estoppel, *see Warner–Jenkinson,* 520 U.S. at 33–34, 117 S.Ct. 1040, or the inherent narrowness of the claim language, *see Sage,* 126 F.3d at 1425, 44 USPQ2d at 1111, many limitations warrant little, if any, range of equivalents.

In this case, we hold that the applicant's use of the term "majority" is not entitled to a scope of equivalents covering a minority for at least two reasons. First, to allow what is undisputedly a minority (*i.e.,* 47.8%) to be equivalent to a majority would vitiate the requirement that the "first and second longitudinal strips of adhesive ... extend the majority of the lengths of said longitudinal marginal portions." '464 patent, col. 10, ll. 56–60. If a minority could be equivalent to a majority, this limitation would hardly be necessary, since the immediately preceding requirement of a "first and second longitudinal strips of adhesive disposed in said first and second longitudinal marginal portions, respectively, of said first face" would suffice. Second, it would defy logic to conclude that a minority—the very antithesis of a majority—could be insubstantially different from a claim limitation requiring a majority, and no reasonable juror could find otherwise.

■ Moore's hypothetical claim analysis under *Wilson Sporting Goods* does not alter this conclusion. A hypothetical claim analysis is not an unbounded inquiry into the relevant scope of equivalents. *See Streamfeeder, LLC v. Sure–Feed Sys., Inc.,* 175 F.3d 974, 983, 50 USPQ2d 1515, 1521 (Fed.Cir.1999) ("A hypothetical claim analysis is not an opportunity to freely redraft claims."). Such an analysis is not divorced from the claim language, but rather must be anchored in the limitation for which a range of equivalents is sought. *Cf. Warner–Jenkinson,* 520 U.S. at 19, 117 S.Ct. 1040 ("Each element contained in a patent claim is deemed material to defining the scope of the patented invention,

and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole."). A hypothetical claim analysis cannot operate to the exclusion of the doctrine of prosecution history estoppel or the All Limitations Rule. *See id.* at 29, 34, 117 S.Ct. 1032 (noting that prosecution history estoppel and the All Limitations Rule act to constrain the doctrine of equivalents). Given our holding that the All Limitations Rule bars Moore's desired scope of equivalents, Moore's poorly-articulated hypothetical claim analysis must also fail.

While Moore alleges that *Graver Tank* holds that an alleged infringer's knowledge and copying of a patent act allows a broader scope of equivalents, we discern nothing in the Supreme Court's opinion to support such a view. In fact, the Supreme Court's more recent opinion in *Warner–Jenkinson* implies the exact opposite by rejecting the relevance of the alleged infringer's intent upon the doctrine of equivalents. *See Warner–Jenkinson,* 520 U.S. at 35, 117 S.Ct. 1040 ("Application of the doctrine of equivalents, therefore, is akin to determining literal infringement, and neither requires proof of intent"). While the Supreme Court briefly touches upon the question of an alleged infringer's knowledge in *Warner–Jenkinson,* the Court mentions such knowledge only in the context of known interchangeability of substitutes for a claim limitation. *See id.* at 36, 117 S.Ct. 1040; *see also Graver Tank,* 339 U.S. at 609, 70 S.Ct. 854 (recognizing the importance of known interchangeability).

Likewise, while Moore argues that the written description's teaching that the length of the first and second strips may be about "half of the length" of the longitu-

dinal marginal portions gives rise to a scope of equivalents that would cover a "minority," our case law reveals that Moore is mistaken. In *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 39 USPQ2d 1001 (Fed.Cir.1996), we explained the contrary principle that "subject matter disclosed in the specification, but not claimed, is dedicated to the public" in determining infringement under the doctrine of equivalents. *Id.* at 1107, 86 F.3d 1098, 39 USPQ2d at 1007. Having fully disclosed two distinct embodiments, one in which the first and second longitudinal strips extend a majority of the length of the longitudinal marginal portions, and one in which they do not, Moore is not entitled to "enforce the unclaimed embodiment as an equivalent of the one that was claimed." *YBM Magnex, Inc. v. International Trade Comm'n,* 145 F.3d 1317, 1320, 46 USPQ2d 1843, 1845 (Fed.Cir.1998).

Accordingly, we hold that the district court appropriately granted summary judgment of no infringement by equivalents of claim 1 of the '464 patent.[3]

## 2. Infringement of Claims 9, 12, 16, and 17

■ Moore argues that the accused SRC form infringes claims 9, 12, 16, and 17 under the doctrine of equivalents, notwithstanding its inability to literally satisfy the following three elements:

(1) "first and second longitudinal strips connecting at least said first and second sections ... together at said longitudinal marginal portions";

(2) "means defining a transverse adhesive strip on said first face ... in said third section"; and

---

**3.** We note that Moore does not contest SRC's claims that the accused SRC form cannot satisfy claim 1's requirement that the "third and fourth longitudinal strips of adhesive ... extend[ ] a distance substantially less than the extent of said first and second strips," '464 patent, col. 10, ll. 62–65, since the corresponding third and fourth adhesive strips in the accused SRC are 99% of the lengths of the corresponding first and second adhesive strips. While we do not rely on the absence of this element from the accused SRC form to support our holding of non-infringement of claim 1, we note that its absence would provide yet another ground for affirming the district court's grant of summary judgment with respect to this claim.

(3) "means defining a transverse line of weakness adjacent said transverse strip in said third section, on the opposite side thereof from said second section."

Moore contends that the accused SRC form is merely a rearrangement of the claim limitations. According to Moore, the accused SRC form is functionally identical to the patented forms of claims 9, 12, 16, and 17, because it also yields an integral, detachable envelope.

Moore argues that the district court erred by rejecting the Supreme Court's 1929 decision in *Sanitary Refrigerator Co. v. Winters*, 280 U.S. at 30, 50 S.Ct. 9, and instead relying upon our decision in *Sage*, 126 F.3d at 1420, 44 USPQ2d at 1103, as barring the application of the doctrine of equivalents to SRC's rearrangement of the claim limitations. Emphasizing the Court's references in *Sanitary Refrigerator* to "form and position" and "reciprocal changes," 280 U.S. at 42, 50 S.Ct. 9, Moore contends that *Sanitary Refrigerator* expressly condones the application of the doctrine of equivalents to mere rearrangements of claim limitations. To the extent that *Sage* and *Sanitary Refrigerator* conflict, Moore argues, *Sanitary Refrigerator* must prevail.

Moore again advances a hypothetical claim under *Wilson Sporting Goods* to support its theory of equivalence. According to Moore, if two of the missing limitations were redrafted as:

(1) "first and second longitudinal strips connecting at least said [first] *third* and second sections ... together at said longitudinal marginal portions"; and

(2) "means defining a transverse adhesive strip on said first face ... in said *second or* third section,"

(bracketed material deleted and underlined material added), the redrafted claims would literally read on the accused SRC form. Moore argues that such claims would be clearly allowable over the prior art.

We reject Moore's overreaching attempt to apply the doctrine of equivalents to the accused SRC form under either a "functional" approach or by a hypothetical claim analysis under *Wilson Sporting Goods*. Both approaches would necessarily vitiate the requirement of claims 9, 12, 16, and 17 that the "means defining a transverse line of weakness [be] adjacent said transverse strip in said third section, on the opposite side thereof from said second section." The accused SRC form undisputedly has a transverse line of weakness adjacent the transverse strip in its *second* section on the *same* side as the *third* section. Given the location of this transverse line of weakness in the second section, the line cannot possibly be on the "opposite side thereof from said second section." Notably, Moore's hypothetical claim analysis is entirely devoid of *any* explanation as to how its desired scope of equivalents would accommodate this limitation.

Moore's appeal to the Supreme Court's decision in *Sanitary Refrigerator* also founders. While *Sanitary Refrigerator* undisputedly refers to "reciprocal changes," it nowhere authorizes the rearrangement of claim limitations. *Sanitary Refrigerator* involved an automatic latching device with "two reciprocal changes" to the form of a patented structure: "one by the insertion of the lug on the keeper head, and the other in the shortened upper arm of the latch." *Sanitary Refrigerator*, 280 U.S. at 42–43, 50 S.Ct. 9. The Supreme Court explained the operation of accused device:

> The coaction of this shortened arm with the lug operates, however, on the cam principle, just as the coaction of the longer upper arm with the curved upper surface of the keeper head in the Winters and Crampton structure [*i.e.*, the patented device], to trip or kick the lower arm of the latch lever into the wedged position under the keeper head.
>
> . . .

[T]he surface of the lug forms in effect the upper side of the keeper head as a substitute for the upper side in the Winters and Crampton structure, which, while left in place, performs no function whatever, just as if it were cut away.

*Id.* at 41, 50 S.Ct. 9. The Court declared, "A close copy which seeks to use the substance of the invention, and although showing some change in form and position, uses substantially the same devices, performing precisely the same offices with no change in principle, constitutes an infringement." *Id.* at 42, 50 S.Ct. 9. Because "one alone of these [two reciprocal] changes cannot be substituted in the Winters and Crampton structure without the other, so as to make it operative," the Court concluded that the changes were "plainly insufficient to avoid the infringement." *Id.* at 42–43, 50 S.Ct. 9.

As the preceding discussion clearly demonstrates, *Sanitary Refrigerator* concerned the typical doctrine of equivalents scenario in which the alleged infringer substitutes insubstantially different elements for the claim limitations; the lug substituted for the upper side of the keeper head, and the upper arm was necessarily shortened to accommodate this lug. Given its factual predicate, *Sanitary Refrigerator* cannot properly be viewed as a case sanctioning the rearrangement of claim limitations. Thus, contrary to Moore's belief, *Sanitary Refrigerator* does not conflict with our holding in *Sage* that where an "issued patent contains clear structural limitations, the public has a right to rely on those limits in conducting its business activities," and the doctrine of equivalents does not apply. *Sage,* 126 F.3d at 1425, 44 USPQ2d at 1108.

We further note that *Sanitary Refrigerator* lacks any discussion of the All Limitations Rule, the vitality of which the Supreme Court has more recently confirmed. *See Warner–Jenkinson,* 520 U.S. at 29–30, 117 S.Ct. 1040. As previously discussed, allowing the allegedly "reciprocal changes" in this case to give rise to infringement by equivalents would vitiate the limitations of claims 9, 16, 17, and 19 that the "means defining a transverse line of weakness [be] adjacent said transverse strip in said third section, on the opposite side thereof from said second section." Even assuming, as Moore argues, that *Sanitary Refrigerator* does allow the rearrangement of claim limitations, such rearrangement must not "effectively vitiate [an] element in its entirety." *Warner–Jenkinson,* 520 U.S. at 29, 117 S.Ct. 1040.

Accordingly, we hold that the district court appropriately granted summary judgment of no infringement by equivalents of claims 9, 12, 16, and 17 of the '464 patent.[4]

## B. The '798 Patent

### 1. Construction of the "Distance Sufficient" Limitation

■ Moore contends that the district court erroneously construed the "distance sufficient" limitation of claim 1 of the '798 patent as constrained by the particular specifications of the IBM 3800 printer. Moore emphasizes that claim 1 recites "a printer used to process the mailer during pausing of the printer," and not "an IBM 3800 printer." Moore argues that the district court, by requiring that the "distance sufficient" be "more than one quarter inch," improperly imported a limitation from the written description into the claim

---

4. We note that Moore does not contest SRC's claims that the accused SRC form lacks "outgoing address indicia" (as required by claims 9, 16, .17, and 19), "outgoing return address indicia" (as required by claims 9, 16, and 19), "return envelope address indicia" (as required by claim 9), "facilitating and suggesting" indicia (as required by claim 9), or a "die cut window" (as required by claim 12).

While we do not rely on the absence of these elements from the accused SRC form to support our holding of non-infringement of claims 9, 16, 17, and 19 of the '464 patent, we note that their absence would provide yet another ground for affirming the district court's grant of summary judgment with respect to these claims.

in contravention of multiple decisions of this court, including *SRI International v. Matsushita Electric Corp.,* 775 F.2d 1107, 227 USPQ 577 (Fed.Cir.1985) (en banc). The district court's reliance on the title of the '798 patent, "Pressure Seal Adhesive Pattern for IBM 3800 Printers," Moore maintains, was also unjustified, because there is no case in which the title of a patent was used to read a term into the claims.

Moore argues that, contrary to the district court's belief, nothing in the prosecution history requires reading the particular specifications of the IBM 3800 printer into the claims. According to Moore, the prosecution history in fact overwhelmingly militates against such a construction. During the prosecution of the '798 patent, the applicant responded to the examiner's indefiniteness rejection with respect to the "distance sufficient" limitation by declaring:

> It is respectfully pointed out that regardless of the fact that different printers have different spacings, *the invention is entitled to a scope that covers all printers.* The fact that a claim is broad does not mean that it is vague or incomplete.

(emphasis added). In response to the examiner's continued rejection that claim 1 was indefinite "because it is impossible to determine the distance claimed in the last paragraph," the applicant again responded:

> [The "distance sufficient" limitation] is a functional description, providing a complete, definite and accurate statement of what the spacing should be. The fact that the spacing is not in numerical terms is irrelevant since a functional term such as this, so long as it is itself definite, is entirely appropriate. This is exactly what *In re Hammack* [427 F.2d 1378, 166 USPQ 204 (C.C.P.A.1970)] holds. In *Hammack,* the exact numerical amount of chemical added to the animal feed was not critical or specified, but rather the functional term "an effective amount for growth stimulation".

> That is the same situation here. The exact numerical spacing is not critical, and will vary from printer to printer, just as the effective amount of growth hormone in *Hammack* varied from animal to animal. . . .

> . . .

> It is impossible for the applicant to anticipate printers with pauses that come out on the market in the future, and measure the exact distance that is necessary for such printers with pauses in the future, but that does not mean that applicant should be denied the rights to his invention. Anyone can determine whether or not they infringe by comparing their product with the functional recitation of claim 1, which is *entirely definite* . . . .

> . . .

> Claim 1 is not indefinite, merely broad enough to protect the applicant's real invention.

Moore maintains that these excerpts from the prosecution history, coupled with the examiner's subsequent allowance of the claims, clearly reveal the applicant's intent and the examiner's understanding that "distance sufficient" is not limited to the particular specifications of the IBM 3800 printer.

Notably, SRC does not dispute that the "distance sufficient" limitation is not limited to the IBM 3800 printer for claim construction purposes (though it contends otherwise for infringement purposes). In fact, SRC goes so far as to suggest that the district court did not "assum[e] that the only printer that the limitations of the claim[s] could relate to is an IBM 3800 printer," as Moore maintains. SRC concedes that:

> [i]t is obviously possible that, in the future, some other company will put out a printer that functions in the same way as the IBM 3800 printer or that IBM will put out another printer that functions in that same way. If that occurs, and if SRC were to put out a form

designed for use with that printer in the fashion specified by the claims in the '798 patent, then those forms would infringe.

We agree with the parties that the "distance sufficient" limitation is not limited to the particular specifications of the IBM 3800 printer. We first note that the plain language of claim 1 recites a "printer" generally, and nowhere mentions the IBM 3800 printer. The preamble, for example, refers to "a printer having rollers, and operated to occasionally pause." '798 patent, col. 6, ll. 50–51.

While the written description refers repeatedly to the IBM 3800 printer, it clarifies that a form for use on an IBM 3800 printer is only the preferred embodiment. *See* '798 patent, col. 1, ll. 40–41 (discussing the "present invention" and referring generally to a "printer used to process the mailers"); *id.*, col. 1, ll. 52–56 (discussing "one aspect of the present invention" and referring to the use of an "IBM 3800 printer having fuser and backup rollers"). Such "[r]eferences to [the] preferred embodiment ... are not claim limitations." *See Laitram,* 863 F.2d at 865, 9 USPQ2d at 1299. That the title also refers to an IBM 3800 printer does not change our analysis, since the bar on importing limitations from the written description into the claims applies no less forcefully to a title. *See Pitney Bowes, Inc. v. Hewlett–Packard Co.,* 182 F.3d 1298, 1312, 51 USPQ2d 1161, 1171 (Fed.Cir.1999) ("[I]f we do not read limitations into the claims from the specification that are not found in the claims themselves, then we certainly will not read limitations into the claims from the patent title.").

■ The prosecution history further informs our analysis. The examiner's indefiniteness rejection with respect to the "distance sufficient" limitation reveals the examiner's belief that the limitation was not restricted to any particular printer. The applicant's responses to these rejections clearly demonstrate a similar understanding on his part. That the examiner yielded to the applicant's arguments by allowing the claims does not, as the district court suggested, establish that the "distance sufficient" limitation must be limited to the particular specifications of the IBM 3800 printer. On the contrary, the examiner's acquiescence indicates his acceptance of the "distance sufficient" limitation as functionally claimed and as properly definite under 35 U.S.C. § 112, ¶ 2. We note that there is nothing wrong with defining the dimensions of a device in terms of the environment in which it is to be used. *See Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,* 806 F.2d 1565, 1575–76, 1 USPQ2d 1081, 1087–88 (Fed.Cir. 1986) (holding that the limitation that the claimed wheelchair have a "front leg portion ... so dimensioned as to be insertable through the space between the doorframe of an automobile and one of the seats thereof" was not indefinite).

While SRC implies that the district court's claim construction is consistent with the preceding discussion, we cannot agree. The district court plainly concluded that "the 'distance sufficient' limitation in claim 1 is in reference to the IBM 3800 printer." *Moore I,* slip op. at 8; *see also id.* at 6 ("In other words, the 'distance sufficient' limitation, according to plaintiff, would be a variable that depends on the type of printer used. The court disagrees."). Despite SRC's attempt to disavow this statement, we agree with Moore that the district court must have meant what it said, and consequently erred. As we explain below, however, this error was entirely harmless.

**2. Infringement**

■ Moore contends that, because the district court erred in its construction of the "distance sufficient" limitation, we must vacate the grant of summary judgment of non-infringement of the '798 patent. Moore emphasizes that, by SRC's own admission, the adhesive on the accused SRC form does not cause problems with respect to the rollers of any printer.

From this fact, Moore deduces that SRC must have solved the problem of the adhesive interfering with printer rollers by spacing the adhesive away from the transverse end edges of the forms, and consequently must literally infringe.

Even in the absence of literal infringement, Moore argues that the accused SRC forms still infringe under the doctrine of equivalents by performing "substantially the same function in substantially the same way to get substantially the same result." At the very least, Moore urges us to vacate the district court's grant of summary judgment of non-infringement since its declarations in opposition to summary judgment raised a genuine issue of material fact.

Moore bears the burden of proof on infringement, but has failed to provide any evidence demonstrating or even suggesting SRC's use of any printer other than the IBM 3800, for which the "distance sufficient" limitation of claim 1 would have to be at least $\frac{5}{16}$ of an inch away from the transverse edges to avoid interference with the printer rollers. This is greater than the distance of the adhesive from the transverse edges of the SRC products in evidence. Moreover, Moore does not dispute that the adhesive, spaced as it is from the transverse edges of the SRC products, engages the rollers of an IBM 3800 printer and, thus, does not and cannot avoid interference with such rollers. Therefore, we hold that SRC cannot infringe claims 1, 2, 4, and 10 as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.") (internal citation omitted).

 Moore's proffered declarations are insufficient to alter this result. A party may not overcome a grant of summary judgment by merely offering conclusory statements. *See Barmag Barmer Maschi-*

*nenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 836, 221 USPQ 561, 564 (Fed. Cir.1984). Moore's declarations allege that the accused SRC forms avoid interference with the printer rollers by being spaced at such distance as to avoid contact with the IBM 3800 printer rollers, which undisputedly impact the form at $\frac{1}{4}$ inch from its transverse edge. Yet these allegations are entirely lacking in factual support. For example, the declaration of Moore's counsel, Robert Vanderhye, states:

> [W]hat is set forth in the Mudry declaration is incorrect and that there are SRC forms having a spacing of much greater than $\frac{1}{16}$ of an inch, in fact even more than $\frac{1}{4}$ inch. In particular, I have measured the spacing … for a number of different SRC forms. Four different forms have spacing … of well more than $\frac{1}{16}$ inch, and two still different forms have spacings of more than $\frac{1}{8}$ inch.

Given that the roller impression area of the IBM 3800 printer is $\frac{1}{4}$ inch, forms with adhesive spaced $\frac{1}{16}$ inch or $\frac{1}{8}$ inch away from their transverse edges cannot literally infringe. Moore's other alleged evidence of literal infringement, two declarations from an account executive and a senior research engineer employed by Moore, generally claim that SRC has modified the spacing of its adhesive on its forms to reduce printing problems; these declarations lack any quantitative description of the increase in the relevant spacing dimension, however.

We also hold that SRC cannot literally infringe claims 3, 5–9, and 11–16. Each of these claims expressly requires that the adhesive strip be located $\frac{5}{16}$ inch away from the transverse edge. As previously discussed, Moore's declarations opposing summary judgment do not create a genuine issue of material fact as to whether the adhesive on the accused SRC form is $\frac{5}{16}$ inch away from the transverse edge. *See Vivid Techs., Inc. v. American Science & Eng'g, Inc.*, 200 F.3d 795, 806–07, 53

USPQ2d 1289, 1297 (Fed.Cir.1999) (holding that party opposing summary judgment must show either that movant has not established its entitlement to judgment on the undisputed facts or that material issues of fact require resolution by trial).

We reject Moore's bald claim that the doctrine of equivalents applies to the claims of the '798 patent. The mere recital of the *Graver Tank* mantra that the accused device performs "the same function, in the same way, to achieve the same result," without more, does not create a genuine issue of material fact as to whether an accused device infringes by equivalents. Moore offers nothing to rebut SRC's claim that its adhesive avoids interference with the rollers of the IBM 3800 printer not as a result of its spacing from the transverse edge, but rather due to its superior composition.

## C. The '110 Patent

### 1. Claim Construction

█ Moore argues that the district court erred in granting summary judgment of non-infringement of the '110 patent due to the accused SRC form's inability to literally satisfy the "devoid of adhesive" limitation of claims 1 and 11 and in view of the prosecution history. According to Moore, the district court failed to evaluate the "devoid of adhesive" limitation in view of the prior art and the prosecution history, as Moore alleges is required by *Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1566, 24 USPQ2d 1321, 1327 (Fed.Cir.1992).

Moore emphasizes that the Conti patent depicts a form with adhesive strips that extend the entire distance between the longitudinal lines of weakness at both end edges. Given this teaching of the Conti patent, Moore theorizes that "devoid of adhesive" must be construed as encompassing a form with "no adhesive extending *substantially completely* along *both the end edges* between the lines of weakness

as in Conti." (Emphasis added.) Alternatively stated, Moore believes that the "devoid of adhesive" limitation extends to forms with adhesive absent from all but one end edge, along which intermittent adhesive extends. Moore further suggests that the phrase "along said end edges" requires that the adhesive not merely be *near* the end edges, but that the adhesive actually *abut* the end edges, as depicted in the Conti patent.

We reject each of Moore's claim construction arguments seriatim. With respect to Moore's belief that the sheet need only be devoid of adhesive that extends "substantially completely" between the longitudinal lines of weakness, we note that the Conti patent discloses an intermittent strip of non-permanent adhesive along the transverse end edge on one face, *see* Conti patent, col. 3, ll. 33–38; Moore even offered a declaration by David Wagner highlighting this teaching. Because, by Moore's own evidentiary submissions, the adhesive strip in the Conti patent need not be "substantially complete," but can in fact be intermittent, we are perplexed by Moore's reliance on the prior art as somehow supporting a construction of "adhesive" as limited to a substantially complete strip. We further note the applicant's statement during the prosecution of the '110 patent that "if one were to remove the adhesive from the end edges of Conti, the remaining elements of Conti would not perform the same function as before." The applicant was plainly speaking of the removal of *all* the adhesive, not merely portions.

While Moore contends that a form that is devoid of adhesive between the longitudinal lines of weakness along all but one end edge would still infringe, the plain language of the claim does not limit the "devoid of adhesive" limitation to only one face or only one edge. Both claims 1 and 11 refer to the sheet as having "opposite end edges" (plural) and first and second faces, and we discern nothing in the plain language of the claims or the written de-

scription that would limit the reference to "said end edges" in the "devoid of adhesive" limitation to only some, but not all, of the end edges. In fact, the written description suggests the contrary, since all of its figures depict a form with no adhesive along *any* of the four end edges between the longitudinal lines of weakness. *See* '110 patent, Figs. 1–3.

Finally, with respect to Moore's bare contention that "along" requires that the strip abut the end edge and not merely be "near" the end edge, we emphasize that the plain meaning of "along" does not so require. According to *Webster's II New Riverside University Dictionary*, "along" means "1. Over, through, or *by* the length of <roses growing along the fence>." *Webster's II New Riverside University Dictionary* 95 (1984) (emphasis added). The definition of "by," in turn, is "1. Next to: *close to* <the light by the window>." *Id.* at 214 (emphasis added). These definitions clearly demonstrate that "along" does not require that a first item *abut* a second item, but rather can be "near" the second item.

### 2. Infringement

■ Moore argues that summary judgment of non-infringement was improper since the widely-spaced adhesive patches on the accused SRC form (1) are near, but not "along," the end edge, (2) do not extend "substantially completely" between the longitudinal lines of weakness, and (3) are absent from at least three of the four end edges. In view of our rejection of Moore's arguments with respect to "substantially completely," "end edges," and "along," we hold that the accused SRC form cannot literally satisfy the "devoid of adhesive" limitation of claims 1 and 11. Claims 1 and 11 positively recite the absence of a feature undisputedly present in the accused form, *i.e.*, adhesive extending along an end edge between the longitudinal lines of weakness. Consequently, the district court appropriately granted summary judgment of no literal infringement of the '110 patent.

■ With respect to the doctrine of equivalents, Moore argues that the accused SRC form is insubstantially different from the claimed form. Moore emphasizes that, like the claimed form, the accused SRC form does not require a tear strip along its transverse edge to open the mailer; rather, after tearing along the form's longitudinal perforation lines, the recipient can untack the mailer by running his or her finger between the adhesive patches. Moore deduces that the adhesive patches in the accused SRC form, by minimizing the amount of adhesive, waste, and costs, essentially function like *no* adhesive at all. While conceding that the accused SRC form "will open just as easily [as the patented mailer], just with slightly more difficulty," Moore contends that the accused SRC form "functions like the Moore form, in the same way, to get the same results."

Yet again, Moore advances the hypothetical claim analysis of *Wilson Sporting Goods* to support its theory of equivalents. According to Moore, a hypothetical claim adding the phrase "that requires a tear strip" after "devoid of adhesive" would avoid the Conti patent, but encompass the accused SRC form.

Moore contends that the district court erroneously viewed the doctrine of prosecution history estoppel as barring its entitlement to any scope of equivalents for the "devoid of adhesive" limitation. Moore cites *Hughes Aircraft Co. v. United States,* 140 F.3d 1470, 46 USPQ2d 1285 (Fed.Cir. 1998), and *Litton Sys. v. Honeywell, Inc.,* 145 F.3d 1472, 47 USPQ2d 1106 (Fed.Cir. 1998), as support for the proposition that limiting a claim during prosecution does not necessarily preclude all applicability of the doctrine of equivalents. Moore argues that the applicant amended the "devoid of adhesive" limitation of claims only to comply with the definiteness requirement of 35 U.S.C. § 112, ¶ 2, and that he added no limitations that would preclude interpreta-

tion of the claims from covering the accused SRC form.

██ We hold that the accused SRC form cannot infringe the '110 patent under the doctrine of equivalents. The doctrine of prosecution history estoppel limits the scope of equivalents by excluding subject matter surrendered by the applicant while prosecuting the patent. *See Warner–Jenkinson,* 520 U.S. at 33, 117 S.Ct. 1040. In prosecuting the '110 patent, Moore argued that it was advantageous not to secure the edge with adhesive. The prosecution history makes clear that the absence of *any* adhesive, not some adhesive, was necessary to secure allowance of the claims. Consequently, Moore is not entitled to a scope of equivalents that would cover a form possessing adhesive along one of its end edges between the longitudinal marginal portions, and SRC cannot infringe under the doctrine of equivalents. As discussed above, Moore's hypothetical claim under *Wilson Sporting Goods* must also fail, given that prosecution history estoppel trumps such an analysis where both are applicable.[5]

## D. Evidentiary Matters

Moore complains that the district court's grant of summary judgment was premature in view of Moore's declarations under Federal Rule of Civil Procedure 56(f),[6] submitted in response to each of SRC's motions for summary judgment. Moore contends that these declarations sufficed to successfully oppose summary judgment. In its declarations, Moore claimed that it

was critical for it to obtain certain allegedly infringing forms from SRC in order to successfully oppose summary judgment. Moore argues that the district court improperly rejected its Rule 56(f) submissions in granting summary judgment of non-infringement of the '798 and '110 patents and ignored its Rule 56(f) submission in granting summary judgment of non-infringement of the '464 patent.

Moore further complains that the district court erred by granting summary judgment before the parties had conducted any significant factual discovery. Moore emphasizes that the parties had not taken a single deposition, SRC had not provided Moore with a single copy of any document, and over four months of discovery remained at the time of the district court's final grant of summary judgment. Moore also contends that SRC had not fully responded to Moore's interrogatories. Moore analogizes this case to *Burnside–Ott Aviation Training Ctr., Inc. v. United States,* 985 F.2d 1574 (Fed.Cir.1993), a contract dispute in which we vacated a grant of summary judgment because, *inter alia,* the plaintiff had been given inadequate time (*i.e.,* two months) for discovery to oppose summary judgment and the government had failed to respond to all of the plaintiff's discovery requests. *See id.* at 1582.

Finally, Moore seeks to supplement the current record on appeal with evidence concerning another SRC form, which it alleges infringes the '464 patent. Moore contends that it only recently uncovered

**5.** We note that, even were we to assume that the doctrine of prosecution history estoppel was inapplicable, we would still affirm. The presence of a feature in an accused device (here, adhesive) cannot possibly be equivalent to the claimed absence of that feature, and no reasonable factfinder could conclude otherwise. Particularly damning to Moore's theory of equivalents are its prosecution statements regarding the particular advantages arising from the absence of adhesive and its concession that the accused SRC mailer opens with "slightly more difficulty" than the patented forms.

**6.** Rule 56(f) states:

**When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

information that SRC had been commercializing this form and that it had not previously conducted discovery regarding this form in reliance on SRC's contrary representations regarding commercialization. Moore argues that this evidence demonstrates the prematureness of the district court's grant of summary judgment.

■ Intrusions into a district court's trial management are rarely appropriate on appeal. *See National Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1197, 37 USPQ2d 1685, 1694 (Fed. Cir.1996). We have reviewed Moore's declarations under Rule 56(f) and conclude that the district court correctly refused to allow Moore to conduct " 'fishing expeditions' in hopes of finding products that might be infringing" to oppose summary judgment. *Moore I*, slip op. at 15. Contrary to Moore's contentions, its Rule 56(f) declarations did not indicate how additional discovery would enable Moore to create a genuine issue of material fact regarding SRC's non-infringement of the three patents. Moore does not contest SRC's claim that Moore's counsel had been allowed to inspect all the accused SRC forms at SRC's headquarters and that the accused SRC forms were publicly available. Consequently, we cannot agree that the district court abused its discretion in refusing to allow additional discovery.

We likewise reject Moore's attempt to analogize the facts of this case to those in *Burnside–Ott*. In *Burnside–Ott*, we noted that the trial judge had "exercised commendable trial management in trying to eliminate unnecessary discovery ... based on his view of the law." 985 F.2d at 1582. Since we determined that the trial judge had erred in barring the plaintiff's equitable estoppel and mutual mistake claims as a matter of law, we remanded the case for additional discovery. *See id.* at 1582–83. Like the trial judge in *Burnside–Ott*, the district court here should be applauded for his expedient handling of this case. But for its harmlessly erroneous claim construction of the '798 patent's "distance sufficient" limitation, the district court's application of patent law was entirely correct. Thus, we need not vacate any of its orders granting summary judgment in order to allow additional discovery.

■ Finally, with respect to Moore's request to supplement the record with evidence concerning an allegedly infringing form that was not before the district court, we note that the record on appeal is generally limited to that which was before the district court. *See* Fed.R.App.P. 10(a). We are especially reluctant to expand the record on appeal where, as here, the party seeking expansion of the record offers no reasonable basis for its failure to produce the preferred evidence at an earlier time. *Cf. Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 988 F.2d 61, 63 (8th Cir.1993). Moore concedes that its allegedly new evidence of infringement had been made available to it for inspection while litigation was ongoing before the district court. Additionally, Moore does not deny that this allegedly new evidence of infringement was within its possession even before it initiated this lawsuit against SRC. While Moore complains that SRC deceived Moore into not seeking discovery regarding this form by claiming that SRC had not commercialized the form, we note that SRC's commercialization of the newly discovered form was not a prerequisite for an infringement claim under the '464 patent; 35 U.S.C. § 271 (1994) also authorizes a finding of infringement by one's manufacture or use of a patented invention. Consequently, we deny Moore's request that we expand the record on appeal.

### E. Cross–Appeal of Invalidity

Given our affirmance of the summary judgment of non-infringement of all asserted claims, we dismiss SRC's conditional cross-appeal of invalidity as moot.

### CONCLUSION

Accordingly, we

*AFFIRM.*

NEWMAN, Circuit Judge, concurring-in-part and dissenting-in-part.

I concur in the judgment of non-infringement with respect to the '798 patent, the '110 patent, and claim 1 of the '464 patent,[1] although I do not share the court's reasoning with respect to either the '798 or the '464 patents. For claim 9 and related claims of the '464 patent, I would reverse the summary judgment and remand for determination of infringement on the correct law.

**The '798 Patent**

The '798 patent is directed to a conventional Z-fold business form whose adhesive structure has been adjusted to avoid sticking to the IBM 3800 printer, which is designed for printing such forms. The '798 patent explains that when forms bearing pressure-sealable adhesive in the "conventional" position at the edge of the form were printed with the IBM 3800 printer, the adhesive would stick to the printer rollers. The '798 patent analyzed this problem as follows:

> The IBM 3800 printer operates in such a way that it pauses at regular intervals. When the printer pauses, it has been found that an impression is created ¼ inch on either side of the fold perforations between forms in the continuous web. Since there is adhesive in that impression area, the forms are caused to stick to the fuser roll and/or the backup roller. This then results in the forms jumping out of time, warping the fuser rolls, etc., as described above.

The patentee solved this problem "in a simple yet effective manner," by repositioning the adhesive to about 5⁄16 inch from the edge, thereby avoiding the IBM 3800 roller impression area at ¼ inch and preventing adhesion to the roller.

Patent claim 1 is representative, with emphasis added to show the claim elements relevant to infringement by the accused SRC forms:

1. A mailer type business form processed by *a printer having rollers, and operated to occasionally pause*, the mailer comprising:

a folded paper sheet having first and second faces, first and second opposite longitudinal edges, and first and second transverse fold lines defining first, second and third sections of said sheet;

first and second longitudinal lines of weakness forming with said longitudinal edges first and second longitudinal marginal portions;

a first transverse edge and a second transverse edge, both parallel to said first and second fold lines;

longitudinal patterns of adhesive disposed in said longitudinal marginal portions for holding said marginal portions of said first through third sections together;

a first transverse pattern of adhesive disposed adjacent said first transverse edge on said first face and first section; and

said first transverse pattern of adhesive being spaced from its associated transverse edge *a distance sufficient to insure that the adhesive does not interfere with rollers of a printer used to process the mailer* during pausing of the printer.

The district court ruled, as a matter of claim construction, that the claims were limited to the IBM printer and the distances described for that printer. The IBM 3800 is the only printer mentioned in the patent, which is entitled "Pressure Seal Adhesive Pattern for IBM 3800 Printers." The court relied on the frequent references to the IBM 3800 in the specification "and indeed in the title of the patent itself," and construed "distance sufficient" in the final clause to mean "more than ¼

---

1. United States Patent No. 5,253,798, United States Patent No. 5,314,110, and United States Patent No. 5,201,464.

inch," the only distance described in the patent.

Moore argues that the claims are not limited to the IBM printer or the placing of the adhesive, and that any forms whose adhesive does not stick to the rollers are covered by the claims, correctly construed. The panel majority agrees with Moore that the claims are not limited to the IBM 3800 printer and the adhesive distances described in the specification, and rules that the district court erred in its claim construction. I do not agree with my colleagues' claim construction. However, their ruling raises a larger concern.

Despite their rejection of the district court's claim construction, my colleagues then mysteriously interpret the claims in the identical way as did the district court, that is, limited to the IBM 3800 printer and the adhesive distances described in the specification. Having explicitly construed the claims as not limited to forms for use with the IBM 3800 printer, the panel majority nonetheless rules that since the SRC forms are not limited to use with the IBM 3800 printer, there can not be infringement as a matter of claim construction. Further, it is undisputed on the record that the SRC forms are fully usable with the IBM 3800 printer. Since the claims as construed by the majority read on the SRC forms, it is, simply, confusing to rule that there can not be infringement as a matter of law. Extensive precedent requires that claims be construed the same way for all purposes. I must, respectfully, dissent from this novel ruling.

**The '464 Patent**

The '464 patent is directed to a C-fold mailer-type business form having an integral return envelope. The patented invention is designed to facilitate manufacture of the mailer as well as its use by the consumer. At issue with respect to the accused SRC mailer are the length and placement of various adhesive strips. Claims 1 and 9 are representative, with emphases added to highlight the terms relevant to the issues of infringement:

1. A mailer type business form intermediate, comprising:

[a] a sheet of paper having a first face, adapted to provide the majority of the interior of the mailer when constructed, and a second face, adapted to provide the majority of the exterior of the mailer when constructed;

[b] said sheet having first and second opposite, parallel longitudinal edges extending the entire length thereof, and opposite ends;

[c] first and second longitudinal lines of weakness formed in said sheet parallel to and adjacent, but spaced from, said first and second longitudinal edges, respectively, said lines of weakness defining, with said longitudinal edges, longitudinal marginal portions;

[d] *first and second longitudinal strips of adhesive* disposed in said first and second longitudinal marginal portions, respectively, of said first face, *extending the majority of the lengths of said longitudinal marginal portions*, and parallel to said first and second longitudinal edges;

[e] *third and fourth longitudinal strips of adhesive* disposed parallel to said first and second strips, and disposed adjacent said first and second lines of weakness on the opposite side thereof from said first and second strips, on said first face, said third and fourth longitudinal strips disposed closer to one end of said ends than the other, and *extending a distance substantially less than the extent of said first and second strips*;

[f] fifth and sixth longitudinal strips of adhesive parallel to said first and second longitudinal edges and disposed in said first and second marginal portions, respectively, on said second face, said fifth and sixth strips located adjacent the same end of said sheet as said third and fourth strips, and having a longitudinal extent at the most equal to said and fourth strips;

[g] *means defining a transverse adhesive strip on said first face*, perpendicular to said third and fourth strips, longitudinally spaced from said third and fourth strips; and

[h] *means defining a line of weakness adjacent said transverse strip*, on the opposite side thereof from said third and fourth strips to allow ready separation of the paper at that line.

9. A mailer type business form, with integral return envelope, comprising:

[a] a C-fold paper sheet having first and second faces, first and second opposite longitudinal edges extending the entire length thereof, and first and second transverse fold lines defining first, second and third sections of said sheet;

[b] said second and third sections being larger than said first section;

[c] first and second lines of weakness formed in said sheet parallel to and adjacent, but spaced from, said first and second longitudinal edges, respectively, said lines of weakness defining with said longitudinal edges, longitudinal marginal portions;

[d] first and second longitudinal strips of adhesive disposed in said first and second longitudinal marginal portions, respectively, of said first face, and parallel to said first and second longitudinal edges; *said first and second longitudinal strips connecting at least said first and second sections, and said third and first sections*, together at said longitudinal marginal portions;

[e] third and fourth longitudinal strips of adhesive disposed parallel to said first and second strips, and disposed adjacent said first and second lines of weakness on the opposite side thereof from said first and second strips, on said first face, said third and fourth longitudinal strips connecting said first section to a part of said second section to form the sides of a return envelope;

[f] *means defining a transverse adhesive strip on said first face*, perpendicular to said third and fourth strips, *in said third section*;

[g] *means defining a transverse line of weakness adjacent said transverse strip in said third section*, on the opposite side thereof from said second section, to allow ready separation of the form at that line;

[h] outgoing address, and outgoing return address, indicia visible from said second face of said third section;

[i] return envelope address indicia printed on said second face in said first section; and

[j] indicia facilitating and suggesting the insertion of return address information on said return envelope, said facilitating and suggesting indicia printed on said second face in both said second and third sections.

Moore appeals the summary judgment of non-infringement under the doctrine of equivalents, stating, correctly, that there are material issues of disputed fact which could not be decided adversely on summary judgment.

### Claim 1, Clause [d]—The Length of the First and Second Longitudinal Adhesive Strips

For claim 1, the panel majority decides that there can not be equivalency of the elements of claim clause [d]. That ruling, which negates equivalency as a matter of law as between substantially identical elements having slight numerical differences, is not in accordance with precedent.

The panel majority holds that a strip length of 47.8% can not be equivalent to a strip length of 50 + %, claimed as the "majority of the lengths" of the form. Whether 47.8% is equivalent to a majority is a question of fact, and could not be decided adversely to the patentee as a matter of law. The evidence of identity of function, way, and result, and of insubstantial difference, was not disputed on summary judgment; the question requires findings of fact, not summary disposition.

The panel majority also states that Moore dedicated to the public all embodi-

ments less than the majority of the length. There is no support for such statement. Neither prosecution history estoppel nor prior art was asserted as limiting equivalency to over 50% of the length. Further, Moore points out that "none of the limitations at issue were added or argued to gain allowance of the claims asserted," citing *Warner–Jenkinson Co. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146, 41 USPQ2d 1865 (1997).

Moore raised a genuine issue of material fact as to whether the 47.8% length of the first and second longitudinal strips in the accused device is equivalent to the "majority of the lengths" of those strips in the patented device. Summary judgment of non-equivalency could not have been based on the evidence before the court.

In addition, claim 9, which requires only "first and second longitudinal strips connecting at least said first and second sections, and said third and first sections, together at said longitudinal marginal portions," does not limit the length of the first and second longitudinal strips to a "majority." Thus summary judgment on this ground can not apply to claim 9.

### Claim 1, Clause [e]—The Third and Fourth Adhesive Strips

As to the third and fourth longitudinal strips, I agree with the district court that no reasonable jury could find equivalency between 98% and "substantially less than the [47.8%] extent of the said first and second strips." On this ground, I concur in the judgment as to claim 1.

### Claim 9—The Rearranged Claim Elements

For claim 9 and the claims grouped with claim 9, the district court ruled that there could be no infringement under the doctrine of equivalents if the accused infringer rearranged any elements from their location described in the claim. Moore argues that SRC has merely rearranged the transverse adhesive strip, which required moving the tear strip for separating the return envelope and the accompanying ad-

hesive, and that the elements "function in exactly the same way to get exactly the same results, i.e. allowing ready detachment of the reply envelope and ready use thereof as a return envelope."

The panel majority rules that the doctrine of equivalents can not be invoked to reach rearranged claim elements, as a matter of law. However, precedent contravenes such an automatic bar; equivalency in fact must be determined. In *Warner–Jenkinson Co.,* 520 U.S. at 40, 117 S.Ct. 1040, 41 USPQ2d at 1875 the Court required "analysis of the role played by each element in the context of the specific patent claim." In *Sanitary Refrigerator Co. v. Winters,* 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147 (1929), the Court recognized that infringement based on equivalency may ensue when claimed elements are reciprocally rearranged. The Federal Circuit in *Corning Glass Works v. Sumitomo Electric U.S.A., Inc.,* 868 F.2d 1251, 9 USPQ2d 1962 (Fed.Cir.1989) recognized equivalency involving rearranged elements.

On this question of fact, summary judgment could not have been granted adversely to Moore. The case as to claim 9 should be remanded for finding of the facts of equivalency.