NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**RED DOG MOBILE SHELTERS, LLC, A DELAWARE LIMITED LIABILITY COMPANY,**
*Plaintiff-Appellant*

**v.**

**KAT INDUSTRIES, INC., KAT MACHINE, INCORPORATED,**
*Defendants-Appellees*

---

2016-1370

---

Appeal from the United States District Court for the Northern District of Texas in No. 3:13-cv-03756-K, Judge Ed Kinkeade.

---

Decided: November 3, 2016

---

ELVIN E. SMITH, III, Law Offices of Elvin E. Smith, III PLLC, Rockwall, TX, argued for plaintiff-appellant. Also represented by CLYDE MOODY SIEBMAN, Siebman, Burg, Phillips & Smith, LLP, Sherman, TX.

RICHARD BRENT COOPER, Cooper & Scully, PC, Dallas, TX, argued for defendants-appellees. Also represented by

DIANA L. FAUST, BENTON WILLIAMS, II, ELLIOTT TEALE COOPER.

————————————

Before REYNA, TARANTO, and HUGHES, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Red Dog Mobile Shelters, LLC brought a suit for infringement against Kat Industries, Inc. and Kat Machine, Inc. (collectively, KAT), alleging that KAT's Tuffy shelter infringes Red Dog's U.S. Patent No. 8,534,001. The district court granted summary judgment of non-infringement. We affirm.

I

Red Dog's '001 patent, entitled "Re-Deployable Mobile Above Ground Shelter," discloses certain protective shelters having features whose purpose is to help the shelter stay in place during high winds or similar conditions. '001 patent, col. 3, lines 37–40. At least some of those features exploit the Bernoulli effect, which involves differences in air pressure related to differences in air speeds, to keep the shelter from moving from the substrate beneath it. *Id.*, col. 3, lines 40–49. Disclosed features include "one or more members that elevate the floor above a substrate, a substantially enclosed sub-floor region bounded by the protected shelter and the substrate, and an air duct providing airflow communication between the substantially enclosed sub-floor region and an exterior region of the enclosure via" venting. *Id.*, col. 2, lines 28–33 (summary of the invention). As to the claims, the district court in this case observed that although "the specification describes the shelter as being mobile, above ground, and as taking advantage of this Bernoulli effect[,] the claims do not strictly require the claimed invention to have these features." J.A. 5.

According to the record on summary judgment that governs the decision on review, KAT manufactures mobile protective shelters that are designed to protect occupants during storms or tornadoes, and the particular one at issue here is the Tuffy shelter. Red Dog brought this infringement suit against KAT in the United States District Court for the Northern District of Texas, alleging that KAT's Tuffy shelter infringed Red Dog's '001 patent. Red Dog asserted claims 44, 45, 47, 48, 55, 57, 60, 77, 89, 90, 91, 92, 93, and 94 of the '001 patent.

For purposes of this appeal, those claims may be divided into two groups: all of the asserted claims except claim 60; and claim 60. Essentially, three claim limitations are at issue. The first limitation appears in all claims except 60 ("support"):

> "multiple rails" (claims 44, 45, 47, 48, 55, and 77) / "elongate members" (claims 89, 90, 91, 92, 93, and 94) "that extend along the first axis, are coupled to the enclosure, and *support* the protective shelter on a substrate" (claims 44, 45, 47, 48, 55, 57, 77, 89, 90, 91, 92, 93, and 94).

'001 patent, col. 21, line 7, through col. 25, line 26 (emphasis added). The other two ("elevate"; "ballast") appear in claim 60:

> "multiple rails that *elevate* the floor above the substrate" (claim 60);

> "a *ballast* disposed beneath at least one of a set including the floor, the first deck, and the second deck" (claim 60).

*Id.*, col. 22, line 55, through col. 23, line 6 (emphases added).

The district court treated Claim 44 as representative of all the claims except claim 60. Claim 44 reads:

> A protective shelter, comprising:

an enclosure having at least a floor, at least one sidewall coupled to the floor, a door, and a roof coupled to the at least one sidewall, wherein the protective shelter has a first axis and an orthogonal second axis both parallel to a plane including the floor of the enclosure, and wherein the protective shelter has a greater first dimension along the first axis and a lesser second dimension along the second axis;

multiple rails that extend along the first axis, are coupled to the enclosure, and support the protective shelter on a substrate;

first and second deck sections coupled to the rails, wherein the first and second deck sections extend substantially symmetrically from the enclosure along the first axis; and

a ballast disposed in one or more locations in the protective shelter, including at least one location in a set including beneath the floor, in the first deck section, and in the second deck section.

'001 patent, col. 21, lines 7–27. All claims at issue, including claim 60, require multiple rails.

Both parties filed motions for partial summary judgment. Red Dog sought a summary-judgment ruling that would reject KAT's defenses of inequitable conduct and laches, but the district court denied that motion, finding triable issues. KAT, for its part, sought summary judgment of non-liability on various grounds. As to grounds of invalidity and unenforceability, the district court denied the motion. But as to non-infringement, the issue now on appeal, the district court granted KAT's motion, ruling that "there are no genuine disputes of material fact present in this issue and the Defendants are entitled to judgment [of non-infringement] as a matter of law." J.A. 7.

The court concluded that Red Dog pointed to insufficient evidence to create a triable issue about whether the accused KAT shelter meets the "support" and "elevate" limitations. In particular, the court found the declaration of Red Dog's expert insufficient, because the expert had "not interpreted the claims and the accused product in a manner consistent with the way a person having ordinary skill in the art would interpret" those claim terms in this patent. J.A. 9–10; *see also* J.A. 10–12. Those conclusions alone required summary judgment as to all asserted claims, but the district court also concluded that Red Dog lacked sufficient evidence to create a triable issue about whether the accused shelter meets the "ballast" limitation of claim 60. J.A. 12–15.

The district court subsequently dismissed all other claims and counterclaims without prejudice and entered a final judgment. J.A. 2. Red Dog appeals. This court has jurisdiction under 28 U.S.C. § 1295(a)(1).

II

We review the grant of summary judgment de novo. *See Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1338 (Fed. Cir. 2016); *Wright v. Excel Paralubes*, 807 F.3d 730, 732 (5th Cir. 2015). Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

Infringement, which is a question of fact, "is amenable to summary judgment when no reasonable factfinder could find that the accused product contains every claim limitation or its equivalent." *Akzo*, 811 F.3d at 1339. That determination depends on claim construction. *Id.* Claim construction is a matter of law, with any underlying findings about extra-patent understandings or other facts outside the patent documents calling for clear-error review. *Id.*

Here, the district court's analysis is best read as based ultimately on the meaning required by the patent itself: "[t]his is just simply not what 'support' means in this context," J.A. 11; Red Dog's "elevate" construction is "certainly not an interpretation that a person of ordinary skill in the art would apply to this patent," J.A. 13. We review that context-based determination de novo. But Red Dog would not be aided even if we read the district court as making a finding about ordinary meaning outside the patent. Such a finding would call for the deferential review of the clear-error standard. Regardless, we conclude that the district court must be affirmed in its constructions of "support" and "elevate," which exclude the accused shelters.

A

The first dispute concerns the meaning of "support." Claims 44, 45, 47, 48, 55, 57, and 77 each include a requirement that the patented product include "multiple rails that extend along the first axis, are coupled to the enclosure, and support the protective shelter on a substrate." '001 patent, col. 21, line 7, through col. 24, line 9. Claims 89, 90, 91, 92, 93, and 94 each require that the product include "multiple elongate members extending along the first axis that are coupled to the enclosure and support the protective shelter on a substrate." *Id.*, col. 24, line 41, through col. 25, line 26.

In order to reach the KAT shelters, Red Dog requires an interpretation of "support . . . on a substrate" that would cover certain raised elements in the KAT shelters that do not sit under the lowered, round central shelter, which sits on the soil (the substrate). J.A. 276, 298 figure 2. Red Dog relied for such an interpretation on its expert's explanation invoking Hooke's Law and Newton's Third Law. J.A. 268, 276–77. The expert drew his "support" conclusion from the assertion that the KAT shelter's raised elements, by their stiffness, bear more load than the shelter's bottom plate alone, J.A. 268, because, when

the shelter sits on the soil and the soil produces an equal and opposite force, some of that force is transferred to the raised elements, J.A. 276–77. Although the expert performed calculations to show such transfer, J.A. 299–300, those calculations add nothing to the just-summarized explanation of why the "support" conclusion assertedly follows.

The district court properly rejected Red Dog's "support" interpretation. J.A. 11. To the extent that the court was making a factual finding that Red Dog's interpretation is not the ordinary, extra-patent meaning of "support" (of the structure by rails) in a context like this one, we find no clear error based on Red Dog's explanation. The physics analysis of forces does not clearly establish the meaning of "support" here. In any event, Red Dog does not meaningfully contend, and we see no basis for concluding, that the '001 patent contemplates a notion of support by rails other than the common-sense one apparent from the written description—namely, rails sitting beneath the shelter, *see* '001 patent, col. 10, lines 21–26 (shelter "supported above the underlying substrate[,] rest[ing] upon one or more . . . rails"); *id.*, col. 4, lines 21–28; *id.*, col. 12, lines 55–62, which is consistent with the focus on creating "a substantially enclosed sub-floor region," *id.*, col. 2, lines 29–30; *id.*, col. 3, lines 45–46 ("substantially enclosed space beneath the shelter floor").

The district court properly rejected the claim interpretation urged by Red Dog. Without that interpretation, there is no basis here for finding that KAT's shelter meets the "support" claim limitations. Summary judgment as to all of the asserted claims except claim 60 was proper.

B

Summary judgment also was proper as to claim 60. It is sufficient to discuss the claim term "elevate." Claim 60 mandates that the product have "multiple rails that elevate the floor above a substrate" and "first and second

decks supported by the rails." '001 patent, col. 22, lines 64–65. We conclude that the district court properly held that the "rails that elevate the floor above a substrate" limitation could not, on this record, be found to cover KAT's shelter, in which the raised elements (the asserted rails) are to the side of the shelter and do not lift its bottom plate above the ground.

Red Dog rests its contrary contention on two assertions together: first, KAT's shelter is elevated because of the thickness of the bottom plate itself, whose top surface—the "floor"—is necessarily above the bottom surface and therefore above the substrate; second, the "rails" are doing the elevating, because the bottom plate is actually part of the rails. J.A. 280. That interpretation covers even a solid floorboard that sits flush on the ground.

We think that the district court properly concluded that Red Dog's interpretation is not one a person of ordinary skill in the art would adopt, at least for this patent. As already noted, the '001 patent clearly contemplates rails that lift the bottom plate above the ground, creating a gap between the floor panel and the ground. '001 patent, col. 3, lines 45–46; *id.*, col. 2, lines 29–30; *see also id.*, col. 4, lines 24–39 (particular embodiment allowing "the free passage air from *any* locale beneath the shelter to any other locale") (emphasis added). More generally, the district court explained, under Red Dog's interpretation, "it would be impossible to create a floor that was not elevated," because the floor would be the (two-dimensional) top of some (necessarily three-dimensional) material, which "would have to have a thickness to it." J.A. 12. Red Dog's "expert's application of 'elevate' does not make any sense." *Id.*

CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED**